UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DARLENE EDWARDS,

                Plaintiff,

      -against-

COMMISSIONER OF SOCIAL SECURITY,

            Defendant.

20-CV-8843 (ALC)

**OPINION AND ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

      Plaintiff Darlene Edwards brings this action challenging the Commissioner of Social Security's ("Commissioner" or "Defendant") final decision that Edwards was not disabled for purposes of entitlement to Disability Insurance Benefits ("DIB") or Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act (the "Act"). Plaintiff and Defendant have both moved for judgment on the pleadings pursuant to Fed. R. Civ. P. Rule 12(e). (ECF No. 17, 19.) For the reasons set forth below, Plaintiff's motion is **DENIED** and Defendant's motion is **GRANTED**.

## BACKGROUND

### I.   Procedural History

      On November 30, 2017, Plaintiff filed an application for SSI benefits, alleging a disability onset date of April 1, 2017. (Pl.'s Mot., ECF No. 18.) Plaintiff filed a written request for a hearing with the Administrative Law Judge ("ALJ") on April 9, 2019. (Record ("R") ECF No. 14 at 108.) Following a video hearing with the ALJ on August 14, 2019, the ALJ issued a decision on September 4, 2019 finding that Plaintiff was not disabled for the relevant time period and denying her application. (*Id.* at 10–25.) On October 29, 2019, Plaintiff submitted a request for review of the ALJ's decision from the Appeals Council. (*Id.* at 177.) This request was denied and the ALJ's

decision was rendered final on August 24, 2020.  (*Id.* at 1.)  Plaintiff filed this action on October 22, 2020, alleging the ALJ committed an error of law and asking the Court to vacate the ALJ's decision and remand for a new hearing *de novo*.  (Compl., ECF No. 1.)  Plaintiff moved for judgment on the pleadings on December 3, 2021.  (Pl.'s Mot., ECF No. 17.)  Defendant cross-moved for judgment on the pleadings on February 1, 2022.  (Def.'s Mot., ECF No. 19.)  Plaintiff filed a reply in further support of her motion on February 22, 2022.  (Pl.'s Reply, ECF No. 21.)

## II.   **Factual Background**

### A.  Non-Medical Evidence

#### i.      *Plaintiff's Background*

Plaintiff was 46 years old at the onset of her alleged disability on April 1, 2017.  (R., ECF No. 14 at 451.)  She completed the 12th grade in 1989 and was enrolled in special education classes from 1984 to 1989.  (*Id.* at 215.)  Plaintiff lives with her minor son in the Bronx, New York and was employed as a housing counselor from January 1994 to November 9, 2016, where she worked 35 hours per week on average.  (*Id.* at 49.)  Her annual income ranged from $15,370.10 to $23,856.65.  (*Id.* at 205.)  She has had no substantial employment since the alleged disability onset date.  (*Id*. at 50.)

#### ii.     *Plaintiff's Testimony and Alleged Disability*

Plaintiff testified that the April 1, 2017 onset of her alleged disability stems from an earlier neck and left shoulder injury that has caused daily pain in her neck, back, and arms, carpal tunnel syndrome, and pinched nerves.  (*Id.* at 55, 59, 215.)  The injury underlying Plaintiff's alleged disability occurred on June 22, 2015, when a detached freezer door fell on her at work.  (*Id.* at 328.)  She testified that the damaged nerves in her neck also occasionally cause blurred vision for up to two hours at a time.  (*Id.* at 52.)  She stated she has difficulty standing for longer than 20

minutes and difficulty sitting for more than 15 minutes. (*Id.* at 56.)  Plaintiff testified that she is able to clean, walk to the grocery store to go shopping with breaks to catch her breath, and cook for herself once a week.  (*Id.* at 65.)  Plaintiff testified that she cannot lift heavier than five pounds with either arm.  (*Id.* at 57.)  Plaintiff receives steroidal injections in her neck to help alleviate pain symptoms.  (*Id.*)  She stated that the injections do not mitigate throat spasms that cause her to lose her voice, and that she stopped taking muscle relaxers prescribed for the issue because her worker's compensation no longer covered the prescription.  (*Id.* at 57–8.)  Plaintiff also testified that the nerve damage in her neck has led to bursitis that causes pain in her legs.  (*Id.* at 59.)

Plaintiff also alleges that she suffers from a mental disability.  In April 2019, Plaintiff began experiencing auditory hallucinations and anxiety attacks and was admitted to Montefiore Hospital for inpatient treatment.  (*Id.* at 54.)  She was admitted to Lincoln Hospital two months later for similar symptoms and her treating psychiatrists increased her dosage of the psychiatric medication Risperdal.  (*Id.* at 61.)  Plaintiff testified that she no longer experiences auditory hallucinations or anxiety attacks after taking Risperdal twice a day.  (*Id.* at 54, 63).  However, Plaintiff noted she occasionally experiences auditory hallucinations when her first dose wears off, but that these hallucinations stop when she takes her second dose.  (*Id.* at 63.)

iii.    *Plaintiff's Disability Report*

According to a disability report filed on January 18, 2018 as part of the SSI application, Plaintiff's reported physical conditions include a neck and left shoulder injury, carpal tunnel, and pinched nerves.  (*Id.* at 214.)  The report indicates the Plaintiff left her job as a housing counselor because of her medical conditions on November 9, 2016, and that she has not worked since.  (*Id.* at 215.)  At the time the report was compiled, Plaintiff was taking cyclobenzaprine, a muscle

relaxer, gabapentin and ibuprofen, pain relievers, and meloxicam, a nonsteroidal anti-inflammatory drug, as part of her treatment.  (*Id.* at 216.)

iv.     *Vocational Expert's Testimony*

At Plaintiff's 2019 hearing, the ALJ heard testimony from vocational expert ("VE") Julie Bose, who testified that Plaintiff's past work as a residential aid was medium-exertion skilled work as defined by the Dictionary of Occupational Titles ("DOT") and light exertion as it was performed by Plaintiff.  (*Id.* at 71.)

The VE then testified in response to various employment hypotheticals posed by the ALJ for a person of the same age, education, and employment background as Plaintiff at different functional capacities.  (*Id.* at 71–5.)  For the first hypothetical, the ALJ asked whether Plaintiff's previous job could be performed by a claimant with the residual capacity to perform light work but who could never climb ladders, ropes, or scaffolds, could only occasionally climb steps and stairs, balance, stoop, kneel, crouch, or crawl, push, pull, and operate hand controls, and could not be exposed to workplace hazards such as unprotected heights and heavy machinery.  (*Id.* at 71.) The VE responded that such limitations would rule out Plaintiff's past work as recognized in the DOT but would remain possible in the manner Plaintiff indicated she performed the job.  (*Id.*)  In the second hypothetical, the ALJ asked whether any other work existed that could be performed by an individual with the first hypothetical individual's residual capacity and the same vocational profile, age, education, and work experience as Plaintiff.  (*Id.* at 71–2.)  The VE opined that such an individual could perform light, unskilled work, such as office helper, storage facility clerk, or order caller—jobs which exist in substantial numbers in the national economy.  (*Id.* at 72.)  In response to the ALJ's third hypothetical about an individual with the same limitations discussed in the first hypothetical with the additional limitation that they could only occasionally lift and

carry ten pounds with the non-dominant extremity, the VE testified that Plaintiff's original work would still be possible as she performed it and would still allow performance of the three listed DOT jobs.  (*Id.*)  For the fourth hypothetical, the ALJ asked about an individual with the same limitations as the previous question who could only perform simple, routine tasks in an environment that involved simple work-related decisions and few workplace changes.  (*Id.* at 73.) The VE responded that such an individual would be ruled out of Plaintiff's original job, which was skilled in nature, but the noted limitations would have no impact on the three jobs indicated earlier. (*Id.*)  Finally, the ALJ asked whether the impact on job availability if an individual with the same limitations listed in the previous hypothetical were additionally off-task up to 20 percent of an eight-hour workday.  (*Id.*)  The VE stated that no jobs existed in the national economy that could be performed by such an individual.  (*Id.*)

 B. <u>Medical Evidence</u>

  *i.* *Treatment Prior to Alleged Onset of Disability*

 Plaintiff had ongoing medical issues for two years prior to the onset of her alleged disability on April 1, 2017.  (*Id.* at 451.)  On July 22, 2015, Plaintiff was injured at work after an unsecured freezer door fell on her neck and shoulders.  (*Id.* at 328.)  From December 3, 2015, to February 12, 2016, Plaintiff attended several physical therapy appointments at KinetoRehab Physical Therapy at Sage Medical Plaza to address ongoing neck and shoulder pain.  (*Id.* at 425.)  Between April 6, 2016 and December 23, 2016, Plaintiff sought treatment for lower back pain with Dr. Steven Aydin at Manhattan Spine and Pain, who prescribed gabapentin, Lyrica, Flector patches, Celebrex, and Zenaflex.  (*Id.* at 367, 386, 390.)

 On January 26, 2017, Plaintiff met with Dr. Gerard Grigoris at the Center for Pain Management seeking treatment for pain stemming from her 2015 injury.  (*Id.* at 442.)  Plaintiff

was diagnosed with cervical spondylosis on the right side of her neck and trapezoidal muscle. (*Id.* at 443.) She was prescribed the medication Duexis and was counseled on the use of non-surgical treatment options such as NSAIDs, steroidal injections, and activity modification for initial treatment. (*Id.*)

On February 14, 2017, Plaintiff underwent a worker's compensation evaluation performed by Dr. Pierce Ferriter (*Id.* at 406.) Dr. Ferriter observed that Plaintiff walked with a normal gait, had normal posture, sat comfortably, and could move her head, neck, and body freely during conversation. (*Id.* at 409.) Inspection of Plaintiff's spine did not reveal swelling, dislocation, deformity, or muscle spasm, though Plaintiff complained of mild tenderness upon palpitation. (*Id.*) Plaintiff demonstrated normal ranges of motion for flexion, extension, right and left lateral flexion, and right and left rotation. (*Id.* at 410.) Left shoulder inspection also revealed no swelling, effusion, erythema, and a normal range of active motion. (*Id.*) Dr. Ferriter concluded that Plaintiff did not require further treatment or physical therapy. (*Id.* at 411.)

*ii.*    *Treatment Following Alleged Onset of Disability*

Plaintiff continued attending appointments with Dr. DeGregoris from July 31, 2017 through August 2, 2018. (*Id.* at 395, 611.) At an appointment on July 31, 2017, Dr. DeGregoris noted that Plaintiff had normal gait and coordination, and referenced a January 2017 cervical MRI that showed degenerative disc disease without new herniation or signs of myelopathy. (*Id.* at 395.) He diagnosed Plaintiff with cervical spondylosis and chronic pain syndrome. (*Id.*) At a follow-up appointment on October 23, 2017, Plaintiff rated her pain intensity as a seven out of ten, and an examination showed paresthesia (or tingling) in her calves with touch. (*Id.* at 488.) Dr. DeGregoris scheduled a cervical facet injection for November 1, 2017, which Plaintiff tolerated well. (*Id.* at 494.) At a June 14, 2018 appointment with Dr. DeGregoris, Plaintiff reported her

pain as a seven out of ten, and was assessed with paresthesia in both calves.  (*Id.* at 587.)  She was observed with normal coordination but a moderately antalgic gait, and was using a cane.  (*Id.*)  Dr. DeGregoris stressed upon Plaintiff the need for physical therapy and over-the-counter medication as a conservative treatment.  (*Id.* at 611.)  At her August 2, 2018 appointment, Plaintiff reported severe axial neck pain that was greatly improved for two months following a facet joint injection, but which returned as the injection wore off.  (*Id.* at 611.)  Dr. DeGregoris observed that Plaintiff had no weakness or fatigue, but that her severe facet pain was worse with extension and her left levator scapulae was tender.  (*Id.* at 613–14.)  Plaintiff was assessed with myalgia and cervical spondylosis and was recommended conservative treatment such as hot or cold compresses, activity modification, physical therapy, over-the-counter pain medication, and, if necessary, further trigger point injections to alleviate her symptoms.  (*Id.* at 614.)

On April 11, 2018, Plaintiff saw Dr. Matthew Mendez-Zfass at New York Orthopedics, who examined Plaintiff and found tenderness of the paracervicals, trapezius and levator scapulae, as well as trapezius trigger point pain.  (*Id.* at 646.)  A shoulder exam found no misalignment, atrophy, swelling, warmth, or scapular winging on either side, but Dr. Mendez-Zfass noted that Plaintiff was limited to 4/5 strength on the left side for abduction, adduction, flexion, external rotation, and internal rotation.  (*Id.*)  Dr. Mendez-Zfass assessed Plaintiff with a partial thickness rotator cuff tear on the left side and cervical radiculopathy.  (*Id.*)  On December 28, 2018, Plaintiff underwent left shoulder arthroscopic surgery performed by Dr. Mendez-Zfass at SurgiCare of Manhattan.  (*Id.* at 654–60.)  There were no complications.  (*Id.* at 660.)

Plaintiff attended three appointments with Dr. Yu-Fan Zhang at Hudson Spine and Pain Medicine on October 9, 2018, February 26, 2019, and June 11, 2019.  (*Id.* at 694, 720, 736.)  At her initial consultation, Plaintiff reported a pain intensity of eight out of ten.  (*Id.* at 694.)  Dr.

Zhang's examination found that Plaintiff had an antalgic gate and that she walked with a cane, had limited cervical flexion, extension, and rotation on both her left and right, and showed tenderness over the facet joints, paraspinal muscles, rhomboid muscles, and trapezius muscles, but he found that she was not in acute distress.  (*Id.*)  Plaintiff was assessed with radiculopathy in the cervical region and myalgia, but Dr. Zhang noted that even though Plaintiff was encouraged to take over the counter medication and attend physical therapy, she was doing neither.  (*Id.* at 695.)  At her follow-up on February 26, 2019, Dr. Zhang made the same assessment as Plaintiff's previous visit, noting that Plaintiff was taking Tylenol and Motrin.  (*Id.* at 720.)  Dr. Zhang also noted that Plaintiff was restricted from lifting, pulling, and pushing more than fifteen pounds, but advised the same conservative therapies as the previous physicians.  (*Id.* at 721.)  At the last appointment with Dr. Zhang on June 11, 2019, Plaintiff reported pain intensity of nine out of ten, which was aggravated by head turns, as well as paresthesia in the upper extremities, but said that she was not attending physical therapy or taking any medication for the pain.  (*Id.* at 736.)  Dr. Zhang assessed her with radiculopathy in the cervical region, myalgia, and unspecified spondylosis, and again recommended physical therapy, which Plaintiff had not attended since 2015.  (*Id.* at 736–37.)

iii.   *Prior Administrative Medical Findings*

On February 8, 2018, Plaintiff saw Dr. Michael Healy for a consultative internal medicine examination as part of her application for disability benefits.  (*Id.* at 430.)  Plaintiff complained of neck pain at the level of the C7 spinous process that radiated to the left side, left shoulder pain dating back several years, and pain and paresthesia in both hands that she attributed to carpal tunnel syndrome.  (*Id.*)  Plaintiff stated that she could cook, clean, launder, shop, and dress herself.  (*Id.* at 431.)  Dr. Healy's assessment found no acute distress, but noted that Plaintiff had a slightly widened and shortened gait, could not walk on her heels and toes, could not squat or rise from a

chair without difficulty, and required assistance getting on and off the exam table.  (*Id.*)  A musculoskeletal examination showed decreased flexion and extension of the cervical spine by 20 degrees anterior and posterior, decreased lateral flexion of 15 degrees, and rotary movement 40 degrees bilaterally.  (*Id.* at 432.)  Dr. Healy noted that Plaintiff had decreased rotation of the left shoulder with forward elevation and abduction of 70 degrees, but full range of motion of the right shoulder as well as the bilateral elbows, forearms, wrists, and the lower extremities.  (*Id.*)  Dr. Healy diagnosed Plaintiff with chronic neck pain probably related to cervical spinal intervertebral disc disruption, chronic lumbar pain probably related to lumbar spinal intervertebral disc disruption, morbid obesity, rotator cuff injury, and bilateral carpal tunnel syndrome.  (*Id.*)  He noted a good prognosis, though his medical source statement indicated Plaintiff had mild to moderate limitations sitting, standing, walking, climbing stairs, bending, lifting, and carrying.  (*Id.*)

On March 14, 2018, state agency medical consultant Dr. R. Pradhan reviewed Plaintiff's medical record as part of her disability determination explanation.  (*Id.* at 82.)  Dr. Pradhan listed Plaintiff's primary medically determinable impairment as severe unspecified "spine disorders." (*Id.* at 85.)  In rating Plaintiff's exertional limitations, Dr. Pradhan said Plaintiff could occasionally lift or carry twenty pounds or less, could frequently lift or carry ten pounds, sit, stand, or walk roughly six hours in an eight-hour workday with normal breaks, and was unlimited in her ability to push or pull.  (*Id.* at 87.)  Plaintiff was noted as having postural limitations that would allow her only occasionally to climb stairs, ropes and scaffolds, as well as stoop, crouch, kneel or crawl.  (*Id.* at 87–8.)  The report also noted that Plaintiff had limitations in reaching overhead on the left side, but that she had unlimited ability on the right shoulder and no limitations on handling, fingering, or feeling.  (*Id.* at 88.)

iv.   *Mental Health Treatment*

On May 18, 2019, Plaintiff was hospitalized after suffering from symptoms of paranoia and auditory hallucinations.  (*Id.*, ECF No. 14 at 675.)  She was treated with risperidone.  (*Id.*)  After three days, treating physician Dr. Jorge Aguilar noted that Plaintiff's auditory hallucinations had subsided and that her feelings of paranoia had improved.  (*Id.*)  She was diagnosed with unspecified psychosis and hallucinations, discharged to her home, referred for outpatient psychotherapy, and prescribed risperidone.  (*Id.*)  Plaintiff was also hospitalized from July 26, 2019 to August 5, 2019 at Lincoln Hospital.  (*Id.* at 681–689.)  The medical records indicate that Plaintiff was compliant with her medication regimen and that she was showing improvement from her initial onset of symptoms.  (*Id.* at 681.)

## LEGAL STANDARDS

### I.   Standard of Review

A district court may review the Commissioner's determination under 42 U.S.C. § 405(g) and can set aside the final decision if there is no "substantial evidence" supporting it or upon the application of an incorrect legal standard.  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).  Substantial evidence, as set forth in § 405(g), is "more than a mere scintilla" and requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Burgess v. Astrue*, 537 F. 3d 117, 127 (2d Cir. 2008) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004)).  The "substantial evidence" standard is even more deferential than the "clearly erroneous" standard.  *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012).  "The Court, however, will not defer to the Commissioner's determination if it is the product of legal error."  *DiPalma v. Colvin*, 951 F. Supp. 2d 555, 566 (S.D.N.Y. 2013) (citation and internal quotation marks omitted).  The same standard as motion to dismiss for failure to state a claim

under Rule 12(b)(6) governs motions for judgment on the pleadings.  *Regan v. Kijakazi*, No. 1:21-CV-03534 (ALC), 2022 WL 4592897, at *5 (S.D.N.Y. Sept. 30, 2022).

## II.    Determining Disability

A plaintiff has a disability if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423 (d)(1)(A).  The disability must be serious enough "that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

Further, a claimant's subjective complaints about their symptoms are, alone, not enough to establish a disability.   20 C.F.R.  §§  404.1529(a), 416.929(a).   These complaints must be corroborated by a medical condition that reasonably could be expected to result in the conditions that, considered with all other evidence, demonstrate that the claimant is disabled.   Where subjective claims are not completely supported by the Administrative Record, the ALJ will consider the frequency and duration of the symptoms, precipitating and aggravating factors, the effect of medication, treatment, functional restrictions, and Claimant's daily activities.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

A district court can only reject facts determined by the ALJ "if a reasonable factfinder would have to conclude otherwise."  *Ortiz v. Saul*, No. 19-cv-942, 2020 WL 1150213 (S.D.N.Y. Mar. 2020) (quoting *Brault v. SSA*, 683 F.3d 443, 448 (2d Cir. 2012)).  Thus, the Court "may not 'substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review.'"  *Briody v. Commissioner of Social Security*,

11

No. 18-cv-7006, 2019 WL 4805563, at *7 (S.D.N.Y. Sept. 30, 2019) (quoting *Jones v. Sullivan*,

949 F.2d 57, 59 (2d Cir. 1991) (internal quotation marks and citation omitted)).

"The Commissioner of Social Security has promulgated regulations that set forth a five-

step sequential evaluation process to guide disability determinations." *Cichocki v. Astrue*, 729

F.3d 172, 174 n. 1 (2d Cir. 2013) (internal citation omitted).  The Second Circuit describes this

process as:

> (1) First, the Commissioner considers whether the claimant is
> currently engaged in substantial gainful activity.
>
> (2) If he is not, the Commissioner next considers whether the
> claimant has a "severe impairment" which significantly limits his
> physical or mental ability to do basic work activities.
>
> (3) If the claimant suffers such an impairment, the third inquiry is
> whether, based solely on medical evidence, the claimant has an
> impairment which is listed in Appendix 1 of the regulations. If the
> claimant has such an impairment, the Commissioner will consider
> him per se disabled.
>
> (4) Assuming the claimant does not have a listed impairment, the
> fourth inquiry is whether, despite the claimant's severe impairment,
> he has the residual functional capacity2 to perform his past work.
>
> (5) Finally, if the claimant is unable to perform his past work, the
> Commissioner then determines whether there is other work which
> the claimant could perform.

*Selian v. Astrue*, 708 F.3d 409, 417–18 (2d Cir. 2013) (alterations omitted).

The Commissioner only has the burden to prove the fifth step, with the plaintiff having the

burden for the preceding steps.  *Id.*  "In the ordinary case, the Commissioner meets his burden at

the fifth step by resorting to the applicable medical vocational guidelines (the grids)."  *Butts v.

Barnhart*, 388 F.3d 377, 383 (2d Cir. 2004), *amended in part on other grounds on reh'g*, 416 F.3d

101 (2d Cir. 2005) (quoting *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999)).

**DISCUSSION**

I.      **The ALJ's Decision**

On September 4, 2019, the ALJ issued a decision finding that Plaintiff has not been under

a disability since the alleged April 1, 2017 onset date.  (R., ECF No. 14 at 24.)  Applying the five-

step sequential evaluation for Social Security disability claims, the ALJ found at step one that

Plaintiff had not engaged in substantial gainful activity since the alleged onset date.  (*Id.* at 12.)

At step two, the ALJ found that Plaintiff had severe impairments of cervical and lumber

degenerative disc disease, left shoulder degenerative joint disease, chronic pain syndrome, obesity,

myalgia, unspecific psychosis and hallucinations, and acute schizophrenia.  (*Id.*)  Plaintiff was also

found to have a non-severe physical impairment of bilateral carpal tunnel.  (*Id.* at 13.)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of

impairments that met or equaled the medical severity of those listed at 20 C.F.R. Part 404, Subpart

P, Appendix 1 ("Listings").  (*Id.*)  The ALJ noted  that there was "no evidence of the record that

show[ed] on appropriate, medically acceptable imaging" that Plaintiff had "joint space narrowing,

bony destruction, or ankylosis of the affected joint resulting in inability to perform fine or gross

movements effectively.  (*Id.*)  The ALJ noted that while the record supports Plaintiff's claims of

lumbar and cervical degenerative disc disease, this impairment fails to meet or equal the criteria

in the Listings for a severe impairment.  (*Id.* at 14.)  Additionally, the ALJ found that Plaintiff has

mild limitations in understanding, remembering, or applying information, as well as interacting

with others, concentrating, persisting, maintaining pace, adapting, and managing herself.  (*Id.* at

15.)  As a result, the ALJ found that Plaintiff's mental impairments do not cause at least two

"marked" limitations or one "extreme" limitation, and so the severity of the Plaintiff's mental

impairments do not meet or medically equal the criteria for a finding of disabled.  (*Id.* 14–15.)

At step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work and simple, routine tasks in an environment involving simple work-related decisions. (*Id.* at 16.) Plaintiff can never climb ladders, ropes, or scaffolds, and cannot reach overhead with the left nondominant upper extremity. (*Id.*) Additionally, Plaintiff must avoid all exposure to workplace hazards such as unprotected heights and dangerous moving machinery. (*Id.*) However, the ALJ found that Plaintiff can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, push and pull, operate hand controls, and reach out front and laterally with the left nondominant upper extremity. *(Id.)* The ALJ found that her RFC is such that she can also occasionally lift and carry 10 pounds with the left nondominant upper extremity. (*Id.*) Accordingly, the ALJ found that the Plaintiff's RFC did not allow her to perform any relevant past work as it was actually or generally performed. (*Id.* at 23.)

At step five, the ALJ determined that considering Plaintiff's age, education, work experience, and RFC, there are jobs Plaintiff can perform that exist in significant numbers in the national economy. (*Id.*)

## II.     The ALJ Relied on Substantial Evidence in Determining Plaintiff's RFC

Plaintiff raises two arguments with respect to the ALJ's RFC findings: that (1) the ALJ failed to develop the record with respect to Plaintiff's mental limitations and impermissibly substituted her own lay opinion where she should have sought further medical testimony and (2) the ALJ failed to rely on substantial evidence in determining Plaintiff's physical limitations because she did not properly evaluate Dr. Zhang's opinion. (Pl.'s Reply, ECF No. 21 at 1–2.) The Court concludes that the ALJ did not err and that her decision was supported by substantial evidence. The Court will address each of Plaintiff's arguments in turn.

A.  The ALJ Adequately Developed the Record in Determining Plaintiff's Mental RFC

Plaintiff argues that the ALJ insufficiently developed the record by failing to obtain further medical opinion evidence regarding Plaintiff's alleged mental limitations.  (*Id.* at 1.)  The ALJ found Plaintiff's "unspecified psychosis and hallucinations [a]nd acute schizophrenia" were severe impairments, but that Plaintiff's resulting limitations in understanding, remembering, or applying information and interacting with others were "at most" mild mental limitations.  (R., ECF No. 14 at 15.)  The ALJ based this finding in part on medical treatment notes from Plaintiff's May 18, 2019 admission to Montefiore Medical Center and her July 26, 2019 admission to Lincoln Hospital.  (*Id.* at 61, 681-–689.)  In the Montefiore notes, Plaintiff's treating psychiatrist stated that although Plaintiff received inpatient psychiatric treatment after suffering from paranoia, auditory hallucinations, and delusions that her neighbors had "hacked" her phone, Plaintiff's symptoms resolved with Risperdal.  (*Id.* at 679.)  Plaintiff suffered a recurrence of hallucinations two months later and she was re-admitted, but these symptoms improved with treatment.  (*Id.* at 681.)  Plaintiff confirmed in her ALJ hearing testimony that her auditory hallucinations have not recurred "since [the treating psychiatrists at Lincoln] raised the dosage" of her medication.  (*Id.* at 54.)  Nevertheless, Plaintiff asserts that by relying on Plaintiff's own testimony and the treatment information in the record, the ALJ impermissibly substituted the ALJ's own opinion where expert medical opinion evidence was required.  (Pl.'s Mem., ECF No. 18 at 16–18.)

The Court disagrees, finding that the ALJ sufficiently developed the record in making her determination of Plaintiff's mental RFC.  Although there was no medical opinion evidence for the specific restrictions reflected in the ALJ's mental RFC determination, "such evidence is not required when the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity."  *Cook v. Comm'r of Soc. Sec.*, 818 Fed. App'x 108, 109

(2d Cir. 2020) (internal citations omitted).  Here, the treatment notes in the record and Plaintiff's own testimony were in line with the ALJ's RFC determinations, which both reflect that although Plaintiff was admitted to the hospital twice, Plaintiff's psychosis and hallucinations amounted to "an isolated incident" that was largely resolved through medication.  (R., ECF No. 14 at 20, 675–689.)  The record contains no evidence that Plaintiff suffered from any other episodes of hallucination, acute schizophrenia, or psychosis outside of the 2019 incident.  The Court also disagrees with Plaintiff's assertion the ALJ should have given more weight to evidence in the record from Plaintiff's high school, which suggests other manifestations of Plaintiff's mental limitations during that time.  (Pl.'s Mem., ECF No. 18 at 17.)  This evidence dates back nearly three decades prior to the onset of Plaintiff's alleged disability, and is not inconsistent with the ALJ's findings that Plaintiff has mild limitations in understanding, remembering, and applying information.  (R., ECF No. 14 at 296–307.)  Thus, because Plaintiff "failed to adduce any medical evidence inconsistent with the ALJ's determinations, the ALJ was not faced with 'any clear gaps in the administrative record' that gave rise to an affirmative obligation to seek a medical opinion." *Cook*, 818 Fed. App'x at 110 (*citing Rosa*, 168 F.3d at 79–80).  The ALJ's determination of Plaintiff's mental RFC is therefore sufficiently supported by substantial evidence in the record.

B.  <u>The ALJ Physical RFC Determination Is Supported by Substantial Evidence</u>

Plaintiff asserts that the ALJ's physical RFC determination is not supported by substantial evidence because she did not give sufficient weight to Dr. Zhang's finding that Plaintiff was restricted from lifting pulling and pushing more than 15 lbs.  (Pl.'s Mem., ECF No. 18 at 15–20.) Specifically, Plaintiff contends that the ALJ erred by failing to include a full restriction on light work or lifting 20 pounds.  (Pl.'s Mem., ECF No. 18 at 19.)

The Court finds the ALJ's physical RFC determination is supported by substantial evidence.  "Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, [s]he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."  *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  The ALJ found that Plaintiff can perform light work and "occasionally push and pull…with the left nondominant upper extremity…[and] can occasionally lift and carry 10 pounds with the left nondominant upper extremity."  (*Id*. at 16.)  Light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying objects weighing up to 10 pounds."  20 C.F.R. §§ 404.1567(b).

Plaintiff's disagreement with the RFC is with the weight the ALJ afforded to certain medical opinions.  However, the substantial evidence standard is a "very deferential standard of review…[that] means once an ALJ finds facts, [the Court] can reject those facts only if a reasonable factfinder would have to conclude otherwise."  *Brault v. Soc. Sec. Com'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal citations and emphasis omitted).  The Court may not re-weigh the evidence in the record because Plaintiff disagrees with the outcome of the ALJ's proper consideration of the weight of the evidence.  *See Krull v. Colvin*, 669 Fed. App'x 31, 32 (2d Cir

2016) ("[Plaintiff's] disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it.")

In making this determination, the ALJ noted that she found that Dr. Zhang's opinions about Plaintiff's fifteen-pound limitation "somewhat persuasive," noting that it was "somewhat consistent" with Dr. Zhang's examination findings showing that Plaintiff had tenderness in the neck and left upper extremity and a limited range of motion in her neck and left shoulder.  (R., ECF No. 14 at 22).  The ALJ also found that Dr. Zhang's opinion was "somewhat consistent" with Plaintiff's other treatment evidence, which showed continuous reports of pain and limited treatment response.  However, the ALJ noted that Dr. Zhang's opinion failed to consider additional limitations, including those relating to Plaintiff's ability to engage in postural activities or her ability to be exposed to hazards.  (*Id.*)  The ALJ also noted that Plaintiff testified that she "estimated that she could lift a maximum of five pounds at a time."  (R. at 17.)  The ALJ also credited the testimony of Dr. Pradham who found that Plaintiff "could lift and/or carry 20 pounds occasionally and 10 pounds frequently."  (R. at 21.)  *See Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000).  An ALJ may "choose between properly submitted medical opinions."  *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998).  For these reasons, the Court finds that the ALJ's determination was supported by substantial evidence.

## CONCLUSION

Upon a thorough consideration of the evidence, the Court finds that the Commissioner's final decision is supported by substantial evidence and based upon application of correct legal standards.  For the reasons stated above, the Commissioner's motion for judgment on the pleadings is **GRANTED** and Plaintiff's motion for judgment on the pleadings is **DENIED**.

The Clerk of Court is respectfully requested to terminate the pending motions at ECF Nos.

17 and 19 and close this case

**SO ORDERED.**

**Dated:**   **May 10, 2023**
            **New York, New York**

_____
          **ANDREW L. CARTER, JR.**
          **United States District Judge**